Brown v. Yukon National Bank.

Opinion delivered March 3, 1919.

1. Banks and banking—draft—title of indorsee bank.—Where a draft is indorsed to and deposited with a bank, and the amount credited to the holder's account, the bank becomes the absolute owner of the draft, and entitled to the proceeds in the hands of a garnishee.

2. Garnishment — judgment for intervener — interest.—Where the court found for the intervener in garnishment, it was error to render judgment against plaintiff for interest upon the total amount in the garnishee's hands; the amount sued for and costs being the basis for computing interest.

3. Costs—allowance on appeal.—On reversing a judgment at law, the court, under Kirby's Digest, § 970, must allow appellant his costs.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; modified.

STATEMENT OF FACTS.

Walter Brown and W. T. Oglesby, a partnership under the firm name of Brown & Oglesby Cash Feed Company, filed a suit, by attachment in the circuit court against Yukon Mill & Grain Company, a non-resident corporation, for a balance alleged to be due on a contract of $210. The basis of the suit is that the plaintiffs bought from the defendant 860 barrels of flour at an agreed price to be shipped as directed. Subsequently a local representative of the defendant sold to a firm of merchants at Hot Springs, one car of flour containing 210 barrels and it was agreed between the plaintiffs and defendant that this flour should be taken out of the lot sold to the plaintiffs and that the defendant would pay them the sum of $1 per barrel advance price. A writ of garnishment was issued against the Peoples Savings Bank of Little Rock. The garnishee answered stating that it had in its possession $2,303.50 which came into its hands from a draft drawn by the defendant upon the plaintiffs. The Yukon National Bank filed an intervention in which it claimed it was the owner of said draft of $2,303.50.

The facts are that the Yukon Mill & Grain Company shipped a car of flour to plaintiffs under the contract above referred to and drew a sight draft on plaintiffs with bill of lading attached for the purchase price of a car of flour which was $2,303.50. The draft was drawn on the 26th day of September, 1917, and on the same day the draft was transferred by the Yukon Mill & Grain Company to the Yukon National Bank at Yukon, Oklahoma, and the amount of the draft was placed to the credit of the Yukon Mill & Grain Company. At the time the bank purchased the draft it did not know anything of any claim of the plaintiffs against the defendant. At that time and up to the date of the trial the Yukon Mill & Grain Company had over $100,000 on deposit with Yukon National Bank.

The court rendered judgment for the intervener, Yukon National Bank, against the Peoples Savings Bank, as garnishee, for $2,303.50, the amount of the draft and also rendered judgment against the plaintiffs in the sum of $135.88 interest on the amount of the draft from October 2, 1917, the date of the filing of this suit, to September 25, 1918, the date of the judgment.

*W. D. Swaim* and *Emerson, Donham & Shepherd,* for appellants.

1.   Appellee paid nothing of value for the draft and was therefore not a *bona fide* purchaser for value. This case is identical with 60 Pac. 273; 106 N. W. 942; 48 So. 340; 67 N. W. 1105; 113 *Id.* 858; 150 U. S. 231; 54 S. E. 862; 77 *Id.* 452; 112 N. W. 999. The cases relied on by appellee, 122 Ark. 104; 101 *Id.* 266, and 107 *Id.* 601, do not apply to this case. The doctrine laid down in those cases is not questioned but do not settle this case, as here the burden shifted to appellants, after appellee had shown that it was the holder of the draft in question, to show that no consideration was paid for it by appellee. This was done by showing that at no time from the date the draft was deposited until its proceeds were attached was the balance of the Yukon Mill & Grain Company less than the

amount of the draft. Appellant here followed the course outlined in the Morrison case (60 Pac. 273), by taking the burden of proof to show that appellee paid no consideration for the draft, and therefore could not be a *bona fide* holder for value. This question is settled, by practically all the courts in this country, that where a bank takes a check or draft and merely deposits the proceeds to the depositor's credit without parting with any other consideration, that alone will not constitute it a *bona fide* holder for value. 8 C. J., p. 482, and cases *supra*. The court clearly erred in finding that appellee was a *bona fide* holder of the draft.

2. The court erred in rendering judgment against appellants for $135.88, interest on $2,303.50 from October 2, 1917, the date the $230, which was part of the proceeds of the draft, September 25, 1918, the date of the judgment of the lower court. If the court was correct in its decision that appellee was the *bona fide* holder of the draft and its owner, then, as the amount attached was only $230, appellants would not be liable in any sum exceeding 6 per cent. interest on $230 from date of attachment to the date of the judgment, with costs. 93 Ark. 609; 73 *Id.* 120. Clearly it was not appellant's duty to to see that the remaining proceeds of the draft were forwarded back to the owner, as this was the duty of the bank as agent of the owner. If any one should suffer on account of the negligence of the garnishee in forwarding the proceeds of the draft less the amount attached, it should be the garnishee or the appellee, as appellee could easily have taken steps to have the garnishee surrender this amount to it if it had been inclined to do so. If this court should find that the lower court was correct in holding that appellee was the owner of the draft, the case should be reversed and judgment entered against them for interest on the $230 at 6 per cent. from date of the attachment to date of judgment and that appellants recover of appellee the costs of this appeal.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee bank.

Whether the Yukon National Bank was a holder for value or not is not the point. The draft was paid when presented to the drawee and the only question is to whom belonged the money that was attached. It is not disputed that the Yukon Mill & Grain Company took the draft and bill of lading to the Yukon National Bank and assigned both to the bank for the full value of the draft paid in the form of a credit on their checking account. This transaction was in the usual course of business and in good faith. The mill company and the bank intended that the bank should own the draft and its proceeds. The relation of creditor and debtor subsisted between them. 196 U. S. 283. The mill company was solvent and could have assigned the draft and its proceeds to any one it pleased, even without consideration, and the assignee could have held them against the world. The fact that the bank could have recovered of the maker if the draft was not paid is of no importance. 127 Ark. 149; 107 *Id.* 601; 15 Ga. App. 319. See also 182 Ill. App. 522; 7 Corp. Jur. 635. The obligation of the garnishee to collect the draft and remit the proceeds to the Yukon National Bank was entire. It could not collect a part only or remit only a part and discharge its obligation. The fund was entire; if part of it did not belong to the Yukon bank then no part of it did.

Plaintiffs caused their attachment to be wrongfully levied on property of the Yukon bank. The bank holding the attached fund appeared in the cause with plaintiff and recited the funds in its hands and how it was acquired and held it subject to the order of court in the proceeding plaintiff was conducting. It was the duty of plaintiff to secure such court orders and so mould his proceedings that his wrongful attachment would not trespass on the rights of others to their damage. Damage to the bank is undenied and the amount undisputed. It was caused by the wrongful proceeding of plaintiffs and they should be made to respond. 66 Ark. 175-178; 62 *Id.* 138; 61 *Id.* 454. If we are wrong in this view we consent

to a remittitur in such amount as to the court seems correct, but the costs of the lower court and on appeal should be taxed against appellants.

HART, J., (after stating the facts). The court was right in holding that the money garnished in the hands of the Peoples Savings Bank belonged to the intervener, the Yukon National Bank, and in this respect the case is ruled by *Cox Wholesale Grocery Co.* v. *The National Bank of Pittsburg, Kansas*, 107 Ark. 601. In that case it was held that where a bank receives upon deposit a draft indorsed without restriction and gives credit for it to the depositor as cash in a checking account, the bank becomes the absolute owner of the draft so deposited. The effect of crediting the proceeds is simply to establish the relation of debtor and creditor between the bank and the depositor. The cases of *Sanders* v. *W. B. Worthen Co.*, 122 Ark. 104, and *Southern Sand & Material Co.* v. *Peoples Savings Bank & Trust Co.*, 101 Ark. 266, and other cases relied upon by counsel for the plaintiffs, have no application to the facts of the present case. The question of whether the bank was a *bona fide* holder of the draft for value so as to be protected against infirmities therein, is not involved in the present case. The maker of the draft is not asserting that it was procured by fraud or that there is any infirmity in it. The fact that the maker of the draft might interpose a defense against the bank when sued on the paper does not impair the negotiability of the draft. The Yukon Mill & Grain Company transferred the draft to the Yukon National Bank. The draft was a negotiable paper and the title to it passed to the bank before the writ of attachment and garnishment in this case was issued. Hence so far as the plaintiffs and garnishee are concerned, the Yukon National Bank had a right to the proceeds of the draft.

The court erred, however, in rendering judgment against the plaintiffs for interest on $2,303.50, the full amount of the draft from October 2, 1917, the date of filing the suit, to September 25, 1918, the date of the judgment.

The amount sued for by the plaintiffs was $210 and the costs amounted to only $20. Therefore, interest at the rate of 6 per cent. should have been allowed only on the sum of $230 from October 2, 1917, to September 25, 1918, which would amount to $21.40. Therefore the court should have only rendered judgment for this amount.

For the error in not doing so, the judgment must be reversed. But, inasmuch as the case has been fully developed, judgment will be rendered here against the plaintiffs in favor of the intervener for that amount. This will carry the cost of the appeal. Section 970 of Kirby's Digest provides that if the judgment be reversed, the appellant shall recover his costs. This is an action at law and this court has no discretion in the matter of adjudging costs when it reverses the judgment. *American Soda Fountain Company* v. *Battle,* 85 Ark. 213.

It is so ordered.